AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One (1) Alcatel Cell Phone - S/N: 014611008133520 | Case No.  **19MJ4705** |

**FILED**
OCT 24 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, & 963 | Importation of a controlled substance; conspiracy to commit the same |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matthew Smith - HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/24/19

City and state: San Diego, California

*Judge's signature*

Honorable Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Matthew Smith, a Special Agent with the United States Department of Homeland Security - Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic devices:

> One (1) Samsung Cellular Phone
> Model Number: Galaxy S9
> IMEI: 353301090255915
> **Target Device #1**

> One (1) Blu Cellular Phone
> Model Number: A010U
> IMEI: 355893076708881
> **Target Device #2**

> One (1) Alcatel Cellular Phone
> Model Number: 1050A
> S/N: 014611008133520
> **Target Device #3**

collectively, the **Target Devices**, as described in Attachments A-1, A-2, and A-3.

2. The **Target Devices** were seized on October 8, 2019, from Vanessa TACHIQUIN and Carolina VAZQUEZ' possession at the time they were arrested at the Otay Mesa California Port of Entry, for the importation of approximately 26.46 kilograms (58.33 pounds) of methamphetamine in violation of Title 21, United States Code, Sections 952, 960. At the time of their arrest, TACHIQUIN was the driver of a 2011 silver Jeep Grand Cherokee bearing California license plate 8LTA049. The **Target Devices** are currently in the possession of the Department Homeland Security (DHS), Homeland Security Investigations, located at 880 Front Street, Ste. 3200, San Diego, CA 92101.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

## BACKGROUND AND EXPERIENCE

4.     I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been employed by HSI since October of 2018. My duties include conducting investigations regarding the illicit trafficking, importation and distribution of illegal substances. I have successfully completed twelve weeks of the Criminal Investigator Training Program (CITP) and fourteen weeks of HSI Special Agent Training (HSI-SAT) both at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. My training included the use of cellular and digital telephones, and other electronic devices used by narcotics smugglers during their illicit activities. I have received training on how to conduct investigations regarding narcotics trafficking, violations of U.S. Customs laws, and the Controlled Substance Act; as defined within Title 21 of the United States Code. I have conducted multiple criminal investigations into violations of federal and state law including, but not limited to, contraband smuggling, narcotics trafficking, and organized criminal activity. Currently, I am assigned to a money laundering task force.

5.     Prior to my employment with HSI, I was employed as a full-time sworn federal agent with the United States Border Patrol since February 2008. I also completed the United States Border Patrol (USBP) law enforcement training academy, which was twenty-two weeks of training at FLETC in Artesia, New Mexico.

6.     Based upon my training and experience as a law enforcement officer, I am familiar with the ways in which drug smugglers and traffickers conduct their business. During the course of my duties, I have (a) worked as a case agent, directing specific drug-related investigations; (b) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (c) participated in the execution of search warrants related to drug investigations; (d) initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute; and (e) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through

these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers, traffickers and those associated with the drug subculture.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the phone numbers of calls placed to and from cellular telephones.

8. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal

3

cargo;

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search a cellular telephone that is believed to contain evidence of violations of 21 U.S.C. §§ 952, 960, & 963.

11. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

4

## FACTS SUPPORTING PROBABLE CAUSE

12. On October 8, 2019, at approximately 7:50 p.m., Vanessa TACHIQUIN (TACHIQUIN), a United States citizen, attempted to enter the United States from the Republic of Mexico via the Otay Mesa California Port of Entry. TACHIQUIN was the driver of a 2011 grey Jeep Patriot bearing California license plates 8LTA049 (Subject Vehicle). TACHIQUIN was accompanied by Carolina VAZQUEZ, a legal permant resident of the United States, and VAZQUEZ' minor child.

13. In the pre-primary inspection area, TACHIQUIN and VAZQUEZ provided the Customs and Border Protection Officer (CBPO) with two negative declarations. While speaking with TACHIQUIN, the CBPO noticed what he perceived to be nervous behavior. For example, the CBPO noticed TACHIQUIN's hands were shaking and she appeared to be avoiding eye contact with him during questioning. TACHIQUIN stated that she was the registered owner of the Subject Vehicle and provided the CBPO with the registration slip.

14. During the primary inspection, a Narcotics and Human Detection Dog alerted to the Subject Vehicle. The Subject Vehicle was sent to secondary inspection.

15. During a secondary inspection, CBPOs conducted an X-Ray scan of the Subject Vehicle. The scan revealed visible anomalies throughout the roof and quarter panels.

16. CBPOs then found and removed a total of fifty (50) vacuum sealed packages concealed within the Subject Vehicle's roof and quarter panels. The contents of the packages field-tested positive for methamphetamine and weighed approximately 26.46 kgs (58.33 pounds). CBPOs placed TACHIQUIN and VAZQUEZ under arrest for violations of Title 21 U.S. Code sections 952 & 960.

17. Homeland Security Investigations Special Agents (SAs) collected **Target Device #1** from TACHIQUIN's property basket, and **Target Device #2** and **Target Device #3** from VAZQUEZ' property basket.

18. TACHIQUIN waived her *Miranda* rights and elected to provide a statement. In summary, TACHIQUIN stated that she is the sole owner of the Subject Vehicle and

doesn't allow anyone else to drive it. TACHIQUIN also stated that in the approximate month that she has owned the Subject Vehicle no mechanical work has been performed. One the day of her arrest, TACHIQUIN was going to the United States with VAZQUEZ to go shopping at the Walmart on Areo Drive, in San Diego, California. After shopping, TACHIQUIN was going to drop VAZQUEZ off at the Greyhound bus station so she [VAZQUEZ] could travel north to visit her uncle. When SA Smith explained to TACHIQUIN that a large amount of methamphetamine was discovered hidden throughout the Subject Vehicle, she said "I don't even know what that is." TACHIQUIN added that she had no idea how the drugs got into her vehicle. TACHIQUIN was allowed to place a call utilizing **Target Device #1**. She successfully entered her password and began placing a phone call to the recipient of her choosing. After the call failed to connect, TACHIQUIN quickly powered the phone off.

19. VAZQUEZ also waived her *Miranda* rights and elected to provide a statement. In summary, VAZQUEZ stated that she is a long-time friend of TACHIQUIN and was traveling to the United States to go shopping with TACHIQUIN. VAZQUEZ mentioned sending a text message to TACHIQUIN prior to leaving for the border, asking her [TACHIQUIN] what time to arrive at the house. Around 7:00 PM, they began traveling north toward the border. VAZQUEZ believed that they were going to the Walmart on Palm Street, in San Diego, California. VAZQUEZ stated that after they were done shopping, her and TACHIQUIN were returning straight to Mexico because VAZQUEZ' father is sick and had recently fallen. During a follow-up interview, VAZQUEZ signed a voluntary consent form allowing the search of **Target Device #2** and **Target Device #3**. During the search of **Target Device #2,** which belonged to VAZQUEZ, SAs asked VAZQUEZ where the text messages that she mentioned sending to TACHIQUIN were located. VAZQUEZ stated that they were there, but she had erased them. VAZQUEZ also stated that her phone wasn't working well because she dropped it, adding that messages don't always stay on the phone and are sometimes all-together not received.[1]

---

[1] Although VAZQUEZ stated that she had deleted the text message to TACHIQUIN, SAs noticed that multiple text messages to other recipients existed on the cell phone.

20. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Devices** contain evidence of violations of 21 U.S.C. §§ 952, 960 & 963, including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as WhatsApp or Facebook) photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import methamphetamine, cocaine or some other federally controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

21. Based upon my experience and investigation in this case, I believe that TACHIQUIN and VAZQUEZ were involved in narcotics smuggling activities. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of TACHIQUIN and VAZQUEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other

digital information are stored in the memory of the **Target Devices.**

22. Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. A law enforcement database check revealed TACHIQUIN was associated with the Subject Vehicle approximately twelve (12) occasions beginning on September 5, 2019, up to and including October 8, 2019. Based on my training and experience, individuals involved in drug trafficking and other criminal activity are often involved for weeks and months prior to the day of their arrest. Given those facts, I respectfully request permission to search the **Target Devices,** for data beginning on August 1, 2019, up to and including October 9, 2019.

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using

forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

26. Based on all of the facts and circumstances described above, there is probable cause to conclude that TACHIQUIN used **Target Device #1** and VAZQUEZ used **Target Device #2** and **Target Device #3** to facilitate violations of Title 21, United States Code, Sections 952, 960, & 963.

27. Because the **Target Devices** were promptly seized during the investigation of TACHIQUIN and VAZQUEZ' trafficking activities, and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by TACHIQUIN and VAZQUEZ continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from August 1, 2019 up to and including October 9, 2019.

28. THEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the

items described in Attachment A-1, A-2, and A-3, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Matthew Smith
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 24th day of October, 2019.

Honorable Karen S. Crawford
United States Magistrate Judge

10

## **ATTACHMENT A-3**

PROPERTY TO BE SEARCHED

The following property is to be searched:

One (1) Alcatel Cellular Phone
Model Number: 1050A
S/N: 014611008133520
 (**Target Device #3**)

**Target Device #3** is currently in the possession of Department Homeland Security (DHS), Homeland Security Investigations (HSI) evidence room, located at 880 Front Street, Ste. 3200 San Diego, CA 92101.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 1, 2019, up to and including October 9, 2019:

a. tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 952, 960, & 963; Importation of a Controlled Substance and Conspiracy to Commit the same.